BLANCHE, Judge.
Plaintiff-appellant, Lloyd B. Wild, was employed as a carpenter for M & M Builders. In the course of his employment he alleged that he inhaled fiber glass insulation which caused damage to his lungs of such a nature as to render him totally and permanently disabled to perform the tasks of his trade. Recovery of total compensation benefits is sought from defendant-appellee, Continental Casualty Company, the workmen’s compensation insurer of plaintiff’s employer. Compensation benefits were paid from October 21, 1967, through March 8, 1968, at the rate of $35.00 per week, and all medical expenses during this period were also paid.
Plaintiff assigns as error the trial court’s giving greater weight to the specialists who examined plaintiff on single occasions than to the testimony of the treating physician. The trial judge in his opinion stated that the testimony of plaintiff that he had no appreciable difficulty in performing his work prior to the incident complained of and that of his doctor that the plaintiff’s overall condition was worsened by said episode was “outweighed by the substantial testimony of three specialists, two of whom were the plaintiff’s own witnesses.” As we view the record, notwithstanding the statement of the trial judge, this is not a case when the judgment went against the plaintiff because the trial judge accepted the testimony of a specialist over that of a treating physician. After a careful review of all of the evidence, we believe this to be a case which favors a holding that the plaintiff failed to establish by a preponderance of the evidence a causal connection between the accident and his resulting disability, and we believe that this was in essence the holding of the trial court with which we concur. We are of the opinion that the medical evidence is in accord with the proposition that if the accident aggravated a prior lung condition, the aggravation subsided by March 8, 1968, and plaintiff’s condition returned to the same as it was before the accident.
Trial judges are in daily pursuit of the task of weighing the evidence to determine whether a party has proved his case by a preponderance of the evidence. By a preponderance of evidence is meant, simply, evidence which is of greater weight or more convincing than that which is offered in opposition to it; that is, evidence which as a whole shows that the fact or causation sought to be proved is more probable than not. Gassiott v. Gordey, 182 So.2d 170 (La.App.3rd Cir. 1966) and cases cited therein.
If evidence is viewed in this light, the testimony of a specialist may easily be accepted over that of the treating physician or vice versa depending on its appeal to sound reason and probabilities.
We approve the principle as a general rule that the testimony of a treating physician who has had the benefit of repeated examinations and sustained observation of the plaintiff under his direct care *785 and treatment should be accorded greater weight and probative value than that of a physician who examined him merely for evaluation purposes, and the testimony of a specialist in a particular field of medicine should be accorded greater weight than that of a nonspecialist in such field (Matherne v. Wheless Drilling Company, 174 So.2d 921, 922 [La.App.4th Cir. 1965]; Ashby v. National Surety Corporation, 203 So.2d 96 [La.App.2d Cir. 1967]) but only if it is credible and of such a nature as to carry the greater weight or is more convincing or is the more probable.
We now turn to a review of the evidence.
Plaintiff’s treating physician was Dr. Glenn Scott, a physician engaged in the general practice of medicine in Poncha-toula, Louisiana. A review of his testimony shows that he had previously treated the plaintiff for emphysema and heart disease approximately five years before the accident. He testified that there was no medical way to determine whether the emphysema worsened as a result of the accident but that it was “possible.” When challenged by counsel for defendant on his use of the word “possible,” he testified that it was “probable” and while plaintiff could have “gotten worse regardless,” it was his opinion that the incident though not the sole cause was a “contributing cause” of his disability. Dr. Scott’s testimony that plaintiff was physically able to carry on the duties of his trade is weakened by the fact that he had not treated him or examined his condition for approximately five years prior to the accident. We, therefore, assume that this conclusion is based on what plaintiff told him, as it could not have been from his own examination which may have revealed a progressive worsening of plaintiff’s condition as is often the case of those persons suffering from emphysema, as medical opinion indicates.
Dr. Clay Waggenspack, another witness called for plaintiff and accepted by the court as a qualified specialist in the field involving pulmonary disease, entertained doubt as to whether fiber glass had entered plaintiff’s lungs. After reviewing authorities on that subject, he concluded that fiber glass, because of the size of its threads and because of its propensity to mat as soon as it touches something, cannot get much past the bronchial tree or into the alveoli (which he described as air sacs within the lungs). He also stated that if what he saw on the x-rays in the bases of the lungs was fibrosis (scarring of the lung tissue), it was his judgment that it was not caused by fiber glass.
Dr. Hulon Lott, also called as a witness for the plaintiff, described plaintiff’s interstitial fibrosis as diffuse and did not believe that one episode could have caused plaintiff’s disability. He did testify, however, that the bleeding or hemoptysis could have been caused by his coughing, and it is clear from the testimony of Drs. Waggen-spack and Beskin that this is a temporary condition causing no permanent injury or damage.
Dr. Charles Beskin, a thoracic surgeon specializing in thoracic and vascular surgery, stated that there was no way to destroy plaintiff’s lungs to the degree that his had been damaged in such a short time with one single exposure to fiber glass. He was of the opinion that plaintiff had extensive pulmonary fibrosis and that much of his chronic pulmonary disease must have preceded his episode of inhaling fiber glass, which he described as “not that traumatic an inhalant, foreign body.”
While we have assumed that plaintiff inhaled fiber glass without our acknowledging that it could have found its way past plaintiff’s bronchial tubes and into his lungs, his testimony fails to enlighten us as to the details of how the accident occurred. He testified that he worked with and around fiber glass insulation but never testified that any was ever inhaled by him.
For the above and foregoing reasons, the judgment of the trial court is affirmed at the cost of plaintiff-appellant.
Affirmed.