CARTER, Judge:
This is an action for workmen’s compensation benefits brought by Norman Jaeckle against Dresser Industries, Inc., his employer at the time of the accident giving rise to the present claim for benefits. The trial court denied benefits. We affirm.
The facts of the accident are not in dispute. Jaeckle was employed by Dresser as a wire line operator. The job required that Jaeckle drive a truck and lift heavy objects. On January 24, 1982, Jaeckle was lifting a heavy object in the course and scope of his employment when he felt something pop in his back. The next day he reported the accident to his supervisor, complaining of severe pain in his back and neck.
Jaeckle first went to see the company doctor, Dr. Warren, who ordered x-rays and prescribed medication and rest. After a week, Dr. Warren referred Jaeckle to Dr. Chris Cenac, an orthopedic surgeon, who similarly ordered x-rays, placed him on medication, and told him to go home and rest. Dr. Cenac told Jaeckle he could go back to work within ten days. After the ten days, Jaeckle testified he was still “having a lot of pain,” so he went to see Dr. Michael Flynn, a chiropractor. Jaeckle saw Dr. Flynn every day for two weeks and thereafter three days a week. Dr. Flynn told Jaeckle to do light duty, which did not involve lifting or climbing. Jaeckle went on light duty until March 10, 1982, when he went to see Dr. Gary Guidry, another orthopedic surgeon, who took some x-rays and ordered Jaeckle to refrain from working.
Dr. Guidry had Jaeckle undergo a CT scan, an electromyelogram, and a lumbar myelogram, all of which indicated a disc protruding at L-5 which indented the dural sac. All of the tests were done in late May and early June 1982. Dr. Guidry saw Jaeckle approximately every other week until Jaeckle returned to his former home in Buffalo, New York, at the end of June, 1982. Dr. Guidry last saw Jaeckle when Jaeckle had returned to Louisiana from Buffalo, New York on October 4, 1982, the day before the trial of the present claim. Dr. Guidry testified that the results of the CT scan, electromyelogram, and lumbar myelogram all furnished objective evidence that Jaeckle was unable to return to his former occupation.
*17 The only other physician who examined Jaeckle was Dr. James Williams, an orthopedic surgeon, who saw Jaeckle at the request of defendant on June 1, 1982, and October 6, 1982. Dr. Williams did not agree with the previous interpretation of the diagnostic tests. He observed no objective indications of plaintiffs injury in either the cervical or lumbar regions. In fact, plaintiff showed no discomfort during Williams’s orthopedic examination, other than a complaint of pain when pressure was applied over the spinous processes of the lower lumbar vertebrae. Dr. Williams found nothing suggestive of a ruptured lumbar disc. No spasm was found. The straight leg raising test, both at the sitting and lying positions, were completely negative. Plaintiff had a complete range of motion without complaint.
Dr. Williams also reviewed the CT scan and lumbar myelogram which had been performed. He rendered an opinion that neither test indicated a ruptured lumbar disc. He read the tests as revealing only a spinal abnormality totally unrelated to the patient’s complaints of pain.
After a trial on the merits, the trial court found that plaintiff was not currently disabled and denied compensation benefits. Plaintiff appeals.
Plaintiff contests the trial judge’s assessment of the credibility of witnesses, particularly medical experts. Plaintiff emphasizes that Dr. Guidry was the treating physician and that, as such, his testimony should be given greater weight than that of Dr. Williams.
Generally, the testimony of a treating physician who has had the benefit of repeated examinations and sustained observation of the plaintiff under his direct care and treatment should be accorded greater weight and probative value than that of a physician who examined him merely for evaluation purposes, and the testimony of a specialist in a particular field of medicine should be accorded greater weight than that of a nonspecialist in such field, but only if it is credible and of such a nature as to carry the greater weight or is more convincing or is the more probable. Wild v. Continental Casualty Company, 234 So.2d 783 (La.App. 1st Cir.1970).
In the case sub judice, the trial judge found the testimony of Dr. Williams concerning the June and October examinations convincing. He noted that Dr. Williams found no objective or subjective symptoms of injury. Further, plaintiff’s initial complaints were of pain in the right leg, a symptom Dr. Williams found inconsistent with the interpretation of the diagnostic tests made by Dr. Guidry. The trial court also found it significant that from the time plaintiff left for New York until he returned to Louisiana (a period of three months), plaintiff did not see either Dr. Guidry or Dr. Williams. Additionally, the trial judge found that plaintiff’s own testimony raised serious questions about his credibility. The trial judge stated:
“At the trial of this matter defendant attempted to establish that plaintiff’s alleged continued disability was the result of an intervening altercation instead of the work-related accident. Plaintiff admitted the altercation and his seeking treatment at the emergency room of Ter-rebonne General Hospital in early February, 1982. But he denied having injured his back, other than by laceration, at that time.
Defendant introduced into evidence the reports of the emergency room treatment which state that Mr. Jaeckle was complaining of pain his neck, back and both sides following ‘several beatings’.
Although the defense falls short of proof of intervening cause, there are sufficient discrepancies between the records and plaintiff’s testimony to discredit the witness.”
A careful review of the pleadings, testimony, and exhibits filed into evidence convinces us that the conclusions reached by the trial court (that Jaeckle is not permanently disabled and is not entitled to compensation benefits) are not manifestly erroneous. The trial judge simply concluded that given plaintiff’s version of his injury, *18 the conflicting medical testimony, and the emergency room reports, the testimony given by Dr. Williams was more probable.
The factual findings of the trial court will not be disturbed in the absence of manifest error. Arceneaux v. Domingue, 365 So.2d 1330 (La.1978). No such error can be found here.
For the above and foregoing reasons, we can not say that the trial court committed manifest error in the assessment of the credibility of the witnesses, and the judgment of the trial court is affirmed. Costs are to be assessed against plaintiff-appellant.
AFFIRMED.
WATKINS, J., dissents and assigns reasons.